No. 23,718.

JOSEPH KASPER, *Appellee*, v. THE KANSAS CITY, LEAVENWORTH & WESTERN RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Interurban Railway—Confined to Intrastate Business —Not Governed by Federal Safety-appliance Act.* An interurban railway company which confines its business to transportation of passengers and goods from place to place within the state, but which rents its cars and transfers its employees to the service of a street-railway company for street-car traffic in Kansas City, Kan., and Kansas City, Mo., located contiguously on opposite sides of the Kansas-Missouri state line, is not engaged in the sort of interstate commerce which is governed by the federal safety-appliance act.

2. SAME—*Personal Injuries—Action for Damages—Choice of Statutes Under Which Action May Be Brought.* In an action for damages to an injured employee against an interurban railway company which confines its business to intrastate traffic, except as that traffic may be altered or qualified by the loan of its cars and employees to another company for street-railway service operated across a state line, it is immaterial whether such action be brought under the state law or the federal employer's liability act, where the state and federal acts are substantially similar in text and effect—following *Kansas City Ry. v. McAdow,* 240 U. S. 51, 60 L. Ed. 520.

3. SAME—*Services of Employee Transferred to Another Master—Liability for Damages.* Where the services of an employee have been transferred by his master to another master the question whether the employee should look to his own master or to his special master for compensation or damages for injuries depends upon whether or not the employee knew or should have known that his services were thus transferred—following *King v. Railway Co.,* 108 Kan. 373, 195 Pac. 622.

Appeal from Wyandotte district court; WILLIAM H. MCCAMISH, judge. Opinion filed May 6, 1922. Reversed.

*McCabe Moore, O. H. Dean, H. M. Langworthy, Roy B. Thomson,* and *Melville W. Borders,* all of Kansas City, Mo., for the appellant.

*A. J. Herrod,* and *H. S. Roberts,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action by a motorman against an interurban railway company for injuries sustained because of an alleged defective brake equipment on the defendant's car operated by plaintiff. The action was brought under the federal safety-appliance act and under the federal employer's liability act; and it is ·defendant's contention that the defendant was not engaged in interstate commerce, and consequently that neither of these acts had anything to do with the rights and liabilities of the litigants in the matter in controversy.

The defendant is a Kansas corporation having a line of electrically operated railway from Fort Leavenworth, Kan., to Kansas City, Kan. It does not profess nor hold itself out to do an interstate business. It sells tickets only from station to station in Kansas. By a contract with a street-railway company doing business in Kansas City, Kan., and Kansas City, Mo., there is an arrangement whereby the defendant's interurban cars, at the end of each run on the defendant's railway from Fort Leavenworth to Kansas City, Kan., become street cars for street-car traffic to the center of Kansas City, Mo., and return, and such cars then resume their interurban service between Kansas City and Fort Leavenworth. Under this arrangement, when the interurban cars are performing this street-railway service, street-car fares are charged and collected as in ordinary street cars, and the earnings for street-railway service are divided between the street-railway company and the defendant company according to an agreement between them. In this street-railway service, also, the motorman and conductor of the interurban company who make the run to and from Leavenworth continue in charge of the car, as employees of the street-railway company, to and from Kansas City, Mo. They receive their instructions from the latter company, and this feature of the traffic is governed to some extent by city ordinances.

The accident which led to plaintiff's injury occurred on the intercity viaduct on the street-railway tracks. Plaintiff says the airbrake equipment was defective, that it would not pump air, and that it failed to maintain pressure, and that this defect caused his car to collide with one in front of it, and injured him. The defendant offered evidence tending to show that the plaintiff's injury was caused solely by his own negligence or that he was guilty of con-

Kasper v. Railway Co.

tributory negligence, which would have barred or minimized a recovery if the jury gave it credence; but the trial court held that the federal safety-appliance act governed the traffic, and that a violation of that act barred the defense of contributory negligence otherwise available under the federal employer's liability act. (*Spokane & I. E. R. Co. v. Campbell,* 241 U. S. 497, 60 L. Ed. 1125.)

We do not think the federal safety-appliance act had anything to do with this case. The defendant was not doing an interstate business—at least not the sort of interstate business governed by that act. The pertinent provision of the federal safety-appliance statute reads:

". . . The provisions and requirements (of the acts of March 2, 1893, and April 1, 1896) . . . shall be held to apply to all . . . cars . . . engaged in interstate commerce . . . excepting those . . . which are used on street railways." (Act of March 2, 1903, U. S. Comp. Stat. 1916, § 8613, 32 U. S. Stat. 943.)

The case of *Spokane & I. E. R. Co. v. United States,* 241 U. S. 344, 60 L. Ed. 1037, is cited and relied on to sustain the ruling of the trial court. In that case an interurban railway company doing an interstate business between Spokane, Washington, and Coeur d'Alene, Idaho, was prosecuted for noncompliance with the federal safety-appliance act. It claimed that its transportation business was exempt from the regulations of the act by the terms of the exception relating to street railways because, in addition to its interstate business, its cars were "used on street railways." The supreme court disapproved that contention. We think the case is not in point, or rather that it is helpful in reaching an opposite conclusion in the case at bar. The Spokane company was undeniably and principally engaged in interstate commerce, and it was not relieved from the control of the federal safety-appliance act merely because its cars were also used on a street railway. But here, conversely, the defendant was exclusively engaged in intrastate commerce except possibly where its cars were used in street-railway service, and consequently its transportation business was not governed by the federal safety-appliance act. (*United States v. Geddes,* 131 Fed. 452; *United States v. Geddes,* 180 Fed. 480.)

Whether the defendant's business was interstate commerce of any sort so as to subject the defendant to the control of the federal employer's liability act is a much closer question. Street-railway service between Kansas City, Kan., and the adjacent town of Kan-

sas City, Mo., is, of course, a sort of interstate commerce—a transportation business across a state line; but it is not the sort of interstate commerce with which congress ordinarily concerns itself.

In *Omaha Street Ry. v. Int. Com. Comm.*, 230 U. S. 324, 57 L. Ed. 1501, the supreme court said:

"Street railroads, on the other hand, are local, are laid in streets as aids to street traffic, and for the use of a single community, even though that community be divided by state lines, or under different municipal control. When these street railroads carry passengers across a state line they are, of course, engaged in interstate commerce, but not the commerce which Congress had in mind when legislating in 1887. Street railroads transport passengers from street to street, from ward to ward, from city to suburbs, but the commerce to which Congress referred was that carried on by railroads engaged in hauling passengers or freight 'between states,' 'between states and territories,' 'between the United States and foreign countries.'" (p. 336.)

In *Kansas City Ry. v. McAdow*, 240 U. S. 51, 60 L. Ed. 520, the supreme court intimated that under the then existing traffic arrangements between this company's predecessor and the street railway in. the two Kansas Citys (an arrangement now substantially changed), the business of defendant was regulated by congress, but did not find it necessary to decide the question positively, for the obvious reason that the federal and state statutes were so similar in terms and effect that defendant's liability to its injured employee was the same whether the action should have been brought under the Kansas statute (Gen. Stat. 1915, § 8480 *et seq.*), or under the federal employer's liability act (Act of April 22, 1908, and amendments of April 5, 1910, U. S. Comp. Stat. 1918, § 8657 *et seq.*).

And so here. It can lead to no conceivable difference whether the cause is tried under the state statute or under the federal employer's liability act, so long as it is made clear that the action is not governed by the federal safety-appliance act. (*Rockhold v. Railway Co.*, 97 Kan. 715, 720, 156 Pac. 775; *Defenbaugh v. Railroad Co.*, 102 Kan. 569, 171 Pac. 647.)

In view of this conclusion, some matters argued by counsel need no discussion, but one other point should be noted. If the plaintiff did not know of the renting of the defendant's cars to the street-railway company, and that his services were transferred to the latter during the time the cars were being used in street-railway service, the plaintiff had a right to continue to look to the defendant for his damages if he was entitled thereto (*King v. Railway Co.*, 108 Kan. 373, 195 Pac. 622), otherwise he should look to his special em-

ployer for the time being. (1 Labatt's Master and Servant, 2d ed., § 52 et seq.; Note, 37 L. R. A. 33 et seq; and see, also, Behen v. Street Railway Co., 85 Kan. 491, 496, 118 Pac. 73.) From the record here, this court is unable to say whether plaintiff was so apprised or not. If this cause is not otherwise determined, this question should be given due consideration in another trial.

Judgment reversed and cause remanded for a new trial.