No. 28,130.

HATTIE G. IOTT, as Guardian, etc., et al., *Appellees*, v. JAMES F. MOSBY and H. H. MACK, Partners, as The Mosby-Mack Motor Company, *Appellants*.

(268 Pac. 109.)

Opinion filed June 9, 1928.

*Keene Saxon,* of Topeka, for the appellants.
*Harry W. Colmery* and *G. Clay Baker,* both of Topeka, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one by Hattie G. Iott, as widow of Walter Iott, deceased, and as guardian of his minor children, to recover compensation for his death. Plaintiff prevailed, and defendants appeal.

The deceased was a mechanic employed to repair cars for defendants. Defendants' place of business is a room fifty feet wide and sixty-five feet long, situated at 119-121 North Kansas avenue, in the city of Topeka. Automobiles having body rattles are given road tests to locate the offending noises. The deceased was directed by defendants' shop foreman to make a road test of a car. In the progress of the test deceased took a position on the fender of the car, while the owner drove it at various rates of speed on several streets of the city, affording different road conditions. At a street intersection seventeen and a half blocks from the shop, a Ford driven at a speed of thirty miles per hour cut in front of the car,

a collision occurred, and Iott was fatally injured. The sole question is whether the accident occurred on, in or about defendants' place of business.

The workmen's compensation act in force when the accident occurred applied to accidents "on, in or about" specified places where the peculiar hazards incident to the employers' business might be encountered. The quoted words were words of locality, having a definite legal meaning at the time the act was adopted, and were advisedly inserted in the act as a distinct space limitation. (*Bevard v. Coal Co.*, 101 Kan. 207, 165 Pac. 657.) The new workmen's compensation act departs from its prototype, the British act of 1897, discards the limitation and, in harmony with later British and American workmen's compensation acts, applies to accidents arising out of and in the course of enumerated hazardous employments. (Laws 1927, ch. 232.) The space limitation may not now be excised from the old law by judicial interpretation in cases arising under the old law.

The deceased was a mechanic in a repair shop at 119-121 North Kansas avenue, which was a factory. He was not injured at that place or in that part of town. The employer establishes his factory so that it covers as much or as little ground as he may desire. It need not be inclosed by a wall, but it must be confined to a limited area, appropriated in fact to factory uses. The hazards of the business arise within the boundary of that space. The hazards, however, may overflow the factory boundary, and by use of the term "about," the space for compensable accident was enlarged to the extent factory danger threatens. The enlargement, however, is still geographical, must be in physical contiguity to the factory area, and cannot extend farther than the danger inhering in the work inside the factory reaches.

In the brief for plaintiff appears the following:

"The employer may adopt as a part of his premises, place or places removed from the immediate factory, and bring them within the 'zone of danger' of its operation, and that 'zone of danger' may cover such physical contiguity as is reasonably necessary for the ordinary business carried on there."

The concluding portion of the proposition was suggested by a sentence in the opinion of Lord Justice Collins in the case of *Fenn v. Miller*, 69 L. J. Q. B., n. s., 439, 441, quoted in the opinion in *Bevard v. Coal Co.*, 101 Kan. 207, 165 Pac. 657:

"To my mind the act does not apply to persons employed about the business

of a factory, where such employment does not involve physical contiguity to the factory within such limits as are reasonably necessary for the ordinary business carried on there." (p. 212.)

The confusion of thought involved in plaintiff's proposition is revealed by what has just been said. An employer may adopt such space as he needs or desires for his factory. The factory will be surrounded by a danger zone created by the hazards of that factory. If he adopts some other premises for use as a factory, in fact outside the danger zone of the established factory, he cannot by adoption bring it within the danger zone of the established factory, any more than by taking thought he can add a cubit to his stature.

Plaintiff's proposition further confuses the limits reasonably necessary for the ordinary business carried on "there," that is, in the factory, with the employer's business carried on, not in the factory but outside of it. In the case of *Hicks v. Swift & Co.*, 101 Kan. 760, 168 Pac. 905, the employer's business included operation of a packing house in Kansas City, Kan., and among other things, delivery of meat from the packing house to customers in Kansas City, Mo. A truck driver was injured while delivering meat several miles from the packing house. He was injured in the course of his employment, but not in the course of his employment in that part of the employer's business conducted on, in or about the factory. In the case of *Carter v. Uhrich*, 122 Kan. 408, 252 Pac. 240, the employer operated a door factory and shipped doors. An employee injured while returning to the factory from a railway station to which he had gone with a shipment of doors, was not injured on, in or about the factory. In the case of *Harrel v. Quiring*, 125 Kan. 249, 264 Pac. 46, an employee injured while setting up a monument in a cemetery at Ellinwood, was injured in the course of employment in his employer's business, but he was not injured on, in or about his employer's factory in Wichita. In this instance, automobiles were repaired in the employers' factory. They were given road tests outside the factory and outside the danger zone of the factory, wherever road conditions suitable for making the tests might be found. While engaged in making a road test, the employee was not on, in or about his employers' place of business, or within such limits as were reasonably necessary for the ordinary business carried on there.

Plaintiff cites the cases of *Gadberry v. Egg Case Filler Co.*, 104

Kan. 72, 177 Pac. 834, and *Wise v. Central Dairy Co.*, 121 Kan. 258, 246 Pac. 501. In the Gadberry case an egg case filler factory and a box board factory were located on adjoining tracts of land. The factories were sixty feet apart, and their docks were connected by a runway across a switch track. Whenever a box car was on the track, bridges were laid on each side of the car and the floor of the car was used as part of the runway. An employee in the egg case filler factory was injured while using the runway in bringing material from the box board factory. The court properly held the entire runway was in such proximity to the egg case filler factory and was so used as a part of its premises that the injury occurred on, in or about the factory. In the Wise case a factory using trucks abutted on a street at the top of a grade. A mechanic was employed to repair the trucks. He, with the help of other employees, pushed a truck needing repair down the grade, to loosen the starter. The starter was loosened, the truck was stopped, and when the employee raised the hood of the truck to ascertain the cause of trouble, a Ford ran into him and injured him. Repair work commenced on the factory premises, when the truck was put in motion, and the court treated the street as the employer treated it—a virtual extension of the factory to include contiguous space appropriate for the conduct of the business, including repair of trucks.

In the Wise case the factory foreman directed employees to push the truck down the grade. The truck was stopped about 200 feet from the factory. A roving commission to wander at will here and there about an undefined district without particular direction or ultimate destination was not contemplated or given, and such a commission will not give locality to a factory, or to the danger zone contiguous to a factory. In this instance the foreman merely told the employee to ride the car, find out where the rattle was, and bring the car back and fix it. The owner drove the car, and so far as the record discloses chose his own route. The car was driven south on Kansas avenue to Third street, west on Third street to Topeka boulevard, south on Topeka boulevard to Sixth street, and west on Sixth street to Western avenue, where the accident occurred. Where the car might have been driven if the accident had not occurred is not known. If it had proceeded some miles westward to the heights beyond the city occupied by the Security Benefit Association's grounds, had ascended the heights, and the accident had

occurred there, those grounds would, according to plaintiff's theory, have become by adoption part of the premises of an automobile repair shop on North Kansas avenue, or would have been brought within its danger zone. Comment is unnecessary.

Plaintiff contends the employee was engaged in engineering work when he was injured, under the provision of the statute defining engineering to include erecting, installing, repairing or removing boilers, furnaces, engines and power machinery, including belting and other connections. Waiving the question whether the provision deals with localized work only, there was no testimony that the employee was sent out to detect motor trouble. Herbert Mack testified that an automobile which has an engine rattle can be tested on the floor of the shop, but that an automobile with a body rattle must be given a road test. The shop foreman testified the owner complained the rattle was in the front end of the car, and testified the rattle appeared to be in the hood, front fenders, and splash apron or mud guard. Nobody disputed this testimony, which was all there was on the subject.

Plaintiff's brief cites and relies on decisions by the courts of California, Ohio, Louisiana, and New York. The decisions were rendered under statutes which do not contain the "on, in or about" limitation, and which are similar to the Kansas statute of 1927.

The judgment of the district court was based on an agreed statement of facts, supplemented by some undisputed testimony. The judgment is reversed, and the cause is remanded with direction to enter judgment for defendants.