No. 29,059.

JOHN A. PEGG, *Appellee,* v. THE POSTAL TELEGRAPH-CABLE COMPANY, *Appellant.*

(283 Pac. 58.)

Opinion filed December 27, 1929.

*C. H. Brooks, Willard Brooks* and *Howard T. Fleeson,* all of Wichita, for the appellant.

*John B. Bryant* and *E. P. Villepigue,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: This controversy involves the question whether messenger boys of a telegraph company are within the purview of the workmen's compensation act. (Laws 1927, ch. 232.) The question was decided in the affirmative by the compensation commissioner and by the trial court, and the defendant appeals.

The commissioner's findings disclosed, among other things, that the Postal Telegraph-Cable Company is engaged in the operation of a telegraph line; that its duty is to pick up messages through messenger-boy service and transmit and deliver them to the persons addressed and to the place to which addressed; that in delivering them to their destination, delivery is made almost entirely by mes-

senger-boy service; that such messenger-boy service in picking up and delivering messages is necessary and essential and is one of the largest factors in the carrying on of the telegraph business; that in the conduct of such business on or about November 28, 1927, one John A. Pegg was in the employ of the Postal Telegraph-Cable Company and on such date met with personal injury by accident while delivering messages originating in other cities; that at the time of the accident Pegg was on his bicycle on his way to deliver his last message, and as he was crossing a street intersection he was struck by a Ford sedan, thrown some distance and run over by a Chevrolet truck; that as a result of such accident his left wrist was broken, his nose broken, a part of one tooth broken off, the ligaments of his left ankle torn and his back sprained. Because of these injuries he was totally disabled for some two weeks, after which he returned and attempted to deliver messages through the office buildings; that after a trial of two weeks he again stopped work because of the weakness of his back and left ankle and his inability to ride a wheel, and did not go back until February 18. He then worked for a period of possibly three or four weeks. Because of his weakness and highly nervous condition at that time he left the employment of the company. An award by the commissioner was approved by the district court.

The compensation act provides:

"That this act shall apply only to employment in the course of the employer's trade or business in the following hazardous employments . . . electric, building, or engineering work." (Laws 1927, ch. 232, § 5.)

Section 8 of the act defines the various employments to which it applies. It specifies that—

" 'Electrical work' means any kind of work in or directly connected with the construction, installation, operation, alteration, removal, or repair of wires, cables, switchboards, or apparatus used for the transmission of electrical current, or operation of telegraph or telephone lines."

That is to say, "electrical work" is not confined to work directly connected with the construction of the lines, but when properly analyzed includes any kind of work in or directly connected with the operation of telegraph or telephone lines.

*Tierney v. Telephone Co.*, 114 Kan. 706, 220 Pac. 190, construing R. S. 44-501 *et seq.*, supports this theory. The plaintiff there was a youth seventeen years old, whose ordinary duties were the charging of batteries in the central exchange. He learned that the lineman was going to Weir City in the company's automobile and rode with

him. On the journey the lineman and the plaintiff halted at intervals when the lineman climbed telephone poles and made tests connecting with some central exchange. While cranking the car the plaintiff was "kicked back" and his arm was broken. Compensation was demanded and refused. In defendant's appeal the main contention was that plaintiff's accident and injury and defendant's liability thereunder were not governed by the workmen's compensation act. It was said in the opinion:

"But it is argued that he was not engaged in electrical work, wire repairing, or operating a telephone line, when the accident occurred—that he was merely cranking a Ford car, the hazard of which undertaking is the same in all walks of life and not related in any way to the hazards of industrial accidents in the telephone business. The compensation act declares certain occupations to be hazardous and imposes a compensatory charge upon such business for injuries sustained by workmen engaged therein, with or without fault of the employer or employee, where such injuries arise from the employment and because of it. The compensation thus allowed is not restricted to injuries which flow from the hazardous features of the employment, but to all injuries which are incidentally sustained in such employment, whether the injuries flow from some peculiar hazard of the business or not." (p. 709.)

In *Smith v. Boiler Works Co.*, 104 Kan. 591, 180 Pac. 259, it was remarked in the opinion:

"A fair statement of the rule under the rather limited statute of this state is that the injury must result from some danger peculiar to the hazardous character of the employment. This does not mean, however, that in a factory classified as extra-hazardous because of the use of dangerous machinery, none but machine operators or employees working in proximity to machinery may have compensation. Regarding for the moment the operating of machinery as the acme of the employment, all that combines to make it such, everything integrated with it essential to effective functioning—other conditions being fulfilled—is included in the hazard." (p. 593.)

See, also, *Phillips v. Kansas City, L. & W. Rly. Co.*, 126 Kan. 133, 267 Pac. 4; *McCormick v. Kansas City*, 127 Kan. 255, 273 Pac. 471.

In *Larsen v. Paine Drug Co.*, 218 N. Y. 252, it was said:

"Appellants' second proposition means that a person engaged generally in an employment which has been defined as hazardous cannot recover compensation for injuries received while performing some act not immediately connected with what might be deemed the hazardous and characteristic feature of the business, although such act was incident to the employment and necessary in prosecuting and carrying forward the business. . . .

"We think this is too narrow a view of the statute and would lead to limitations upon its application which were not intended or anticipated by the legislature. It is not necessary to attempt to lay down a final and universal rule on that subject. We feel perfectly secure, however, in holding that, where, as in this case, an employee is injured while performing an act which is fairly

incidental to the prosecution of a business and appropriate in carrying it forward and providing for its needs, he or his dependents are not to be barred from recovery because such act is not a step wholly embraced in the precise and characteristic process or operation which has been made the basis of the group in which employment is claimed." (pp. 255, 256.)

In support of its contention that it was not under the provisions of the compensation act, the defendant cites and relies on *Udey v. City of Winfield*, 97 Kan. 279, 155 Pac. 43; *Stover v. Davis*, 110 Kan. 808, 205 Pac. 605; *Arizona Eastern R. R. Co. v. Matthews*, 20 Ariz. 282, 180 Pac. 159, 7 A. L. R. 1149. The Udey case involved the question whether a city's electric light and water plant was within the purview of the compensation act of 1911 under which it was required that there be fifteen persons employed in the work in order to subject the utility to the act. Winfield was not under the act unless clerks in the city's office could be held to be under the provisions of the act, and it was held that they were not. In the Stover case it was found that the workmen's compensation act did not apply because the defendant had not employed five or more workmen continuously for more than a month at the time of the accident; that "workmen affected by the act are workmen exposed to the peculiar hazards of the locality." (p. 812.) In the Arizona case it was held that a billing clerk in a local freight house of a railroad company is not employed in mechanical labor within the meaning of the employer's liability act. These cases relied upon by the defendant are not, in our opinion, controlling.

It is contended that the plaintiff is not entitled to the compensation allowed. The commissioner found that the plaintiff—

"was in its [defendant's] employ on or about November 28, 1927, and while so employed met with personal injury by accident arising out of and in the course of employment for which he is entitled to compensation at the rate of six ($6) dollars per week until the further order of the commission, not to exceed the statutory period of four hundred fifteen (415) weeks, subject to review as provided in section 28; that of this amount compensation for a period of nine (9) weeks and three (3) days, or a total of fifty-seven and 20/100 ($57.20) dollars, has already been paid.

"It is further found that the purported final receipt and release in the sum of fifty-seven and 20/100 ($57.20) dollars signed by Albert Johnnie Pegg under date of April 4, 1928, for compensation paid March 19, 1928, is void and of no effect for the reason that such release was signed on representation of E. A. L. Stoll, manager of the Postal Telegraph-Cable Company, that this was the entire amount he was entitled to under the provisions of the workmen's compensation act.

"Wherefore award of compensation is hereby made . . . for compensa-

tion at the rate of six ($6) dollars per week from July 30, 1928, until the further order of the commission, but in no case to exceed the statutory period of four hundred fifteen (415) weeks, less nine (9) weeks and three (3) days, already paid, or 405 weeks and three days, subject to review as provided in section 28."

The defendant presents the question whether the $6 per week minimum compensation was properly applied in this case and points out that the statute [Laws 1927, ch. 232, § 10, par. 3, proviso (b), (c), (22)] pertaining to the allowance of compensation in cases of temporary or permanent partial disability does not provide a minimum payment, but requires a computation based upon earnings before and after the injury. The contention is correct as to the statute, but the provisions referred to are not applicable here. The compensation commissioner found that the claimant is entitled to compensation for temporary total disability until the further order of the commissioner, and in no case to exceed the statutory period of 415 weeks, the award being subject to review, as provided in section 28. The pertinent statute provides:

"Where a temporary total disability results from the injury no compensation shall be paid during the first week of disability, except that provided in paragraph 1 of this section, but after the expiration of said first week payment shall be made in accordance with the provisions of this act, during such temporary total disability, of a sum equal to sixty (60) per cent of the average weekly earnings of the injured workman, computed as provided in section (11) of this act, but in no case less than ($6) per week nor more than eighteen dollars ($18) per week." (Laws 1927, ch. 232, § 10, par. 3, [b].)

The compensation commissioner having found temporary total disability, which finding was approved by the district court, the minimum of $6 per week was properly allowed.

There was, in our opinion, adequate evidence to sustain the commissioner's findings.

The judgment is affirmed.